UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JULES LEE JR | CIVIL ACTION NO.  6:21-CV-04389 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE DAVID J. AYO |

**REPORT AND RECOMMENDATION**

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further consideration in light of new evidence not previously considered.

**Administrative Proceedings**

Claimant, Jules Lee, Jr., fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits, alleging disability beginning on September 1, 2014.  (Rec. Doc. 7-1, p. 501). His application was denied. He then requested a hearing, which was held on July 9, 2021, before Administrative Law Judge Joyce Frost-Wolf. (Rec. Doc. 7-1, p. 418 *et seq*). The ALJ issued a decision on August 25, 2021, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through December 31, 2019, the date last insured. (Rec. Doc. 7-1, p.13-24). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 7-1, p. 4). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

**Summary of Pertinent Facts**

Claimant was born on August 27, 1967. He was 44 years old on the alleged disability onset date and 53 years old at the time of the ALJ's decision. He has a high school diploma, and his work history includes employment as a heavy equipment operator, a clean-up worker, and a driller helper. He served in the Army from 1988 to 1992 with a six-month deployment in Operation Desert Storm. (Rec. Doc. 7-1, p. 22, 60, 517). He alleged that he has been disabled since September 1, 2014, due to his mental health issues including post-traumatic stress disorder (PTSD) and depression, as well as "diabetes worsened, unemployable, sleep apnea, high cholesterol and joint pains." (Rec. Doc. 7-1, p. 519).

The medical records which were in the record before the ALJ's decision reveal the following history:

- In December 2016, Claimant underwent a compensation and pension (C&P) examination for purposes of his Veterans Affairs (VA) benefits by Dr. Joseph Lamanna. This examination diagnosed Claimant with chronic PTSD, finding that he exhibited every symptom under Diagnostic Criterion A-H from the Diagnostic and Statistical Manual of Mental Disorder, 5th edition (DSM 5), as well as the following symptoms: a depressed mood, anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, mild memory loss, such as forgetting names, directions or recent events, flattened affect, difficulty in understanding complex commands, disturbances of motivation and mood, inability to establish and maintain effective relationships, suicidal ideation, obsessional rituals which interfere with routine activities, neglect of personal appearance and hygiene, occasional sudden crying spells, and anhedonia. He also reported occasional suicidal ideation but denied a plan or intent to commit suicide. (Rec.

Doc. 7-1, p. 697 - 698).

- In August of 2017, Claimant had an initial psychiatric evaluation for PTSD with Dr. Charlotte Hutton at the Lafayette campus VA clinic after having been prescribed trazadone and sertraline at the VA clinic.[1] Dr. Hutton noted that Claimant appeared disheveled and that he exhibited the following: psychomotor agitation with eyes looking down and hunched over, poor control, mild thought blocking and guarded affect, anger, anxiety, defensiveness, and mistrust. She noted that his cognitive functioning was intact but that he was uncomfortable discussing his military service and was reluctant to continue taking sertraline. He was instead prescribed olanzapine and continued with trazadone. Claimant reported that he was not comfortable with closed doors, that he had intrusive memories, flashbacks, and nightmares related to his combat service, and that he would get up to check the perimeter of his home as many as three times in a night. He also reported that he was irritable and argumentative, that he was isolative and staying at home most days, that he did not want to get out of bed, that he did not get along with people, and that his memory was "not good". (Rec. Doc. 7-1, p. 641-645).

- In December of 2017, Dr. Hutton filled out a form that appears to have been used to refer Claimant to vocational rehabilitation services. She notes that at the time she had seen the Claimant only once but reported that his condition was "acute," that he was experiencing functional and/or environmental limitations with memory/concentration, anhedonia, decreased energy, lack of sleep, difficulty in interpersonal interactions, and

---

[1] Dr. Hutton's medical records indicate that Claimant had presented for an initial psychiatric evaluation after having seen the PCMHI at LCBOC/A. (Rec. Doc. 7-1, p. 642). It is not clear from the record what these acronyms stand for, but the Court surmises that the evaluation occurred at the Primary Care Mental Health Integration unit at the Lafayette Community Based Outpatient Clinic. (Rec. Doc. 7-1, p. 707).

problems with thought processing due to racing thoughts, agitation, and loss of track of time. She recommended partial hospitalization, life coaching and psychotherapy. She also found that Claimant was not currently employable or able to pursue employment. (Rec. Doc. 7-1, p. 704, 705).

- On March 13, 2018, Claimant saw Dr. Peter Resweber for a psychological evaluation and therapy. Dr. Resweber noted that Claimant was unconvinced, uneasy, and resistant to the interview/services being offered. He asked the therapist to leave the office door a crack open and complained of insomnia, trust issues, irritability, general anxiety, and low mood. Dr. Resweber found that he exhibited fatigue, that his concentration problems had decreased, that he was irritable and/or "on edge," that he had chronic sleep issues and nightmares (though they were improving with medication), that he had loss of pleasure and interest, that he had low self-esteem, and that he was irritable, isolating and withdrawn. Otherwise, he was oriented and coherent, with normal speech and appropriate behavior and thoughts and his mood and affect were also appropriate. (Rec. Doc. 7-1, p. 635 – 638).

- Dr. Sharone Barwise, a staff psychiatrist at the Lafayette Community Based Outpatient Clinic for the VA, sent a letter dated April 27, 2020, (after the date last insured in this case) stating that Claimant was "unable to sustain gainful employment" due to the severity of his PTSD. She also noted that Claimant was designated as having a 70 percent service-connected disability with the VA attributed to his PTSD. (Rec. Doc. 7-1, p. 708). The record also contains a letter from the Department of Veterans Affairs noting that Claimant was honorably discharged and found entitled to a disability compensation rate at 100 percent rate due to service-connected disability(ies) and that

4

his total disability is considered permanent. (Rec. Doc. 7-1, p. 707).

- The non-examining state agency psychological consultants (J. Kahler, Ph.D., and W. Farrell, Ph.D.) found insufficient evidence of mental functioning prior to the date last insured to allow for the evaluation of the criteria and any mental residual functional capacity assessment in this case. (Rec. Doc. 7-1, p. 388 – 403).

- By letter date July 1, 2021, Mr. Peter Lemoine, attorney for Claimant, sent a letter to the Office of Adjudication and Review (ODAR) in Alexandria, Louisiana stating that records from the VA in Alexandria and been requested and not received. (Rec. Doc. 7-1, p. 568).

Claimant testified that when he initially sought help, he was not diagnosed with PTSD and thus did not receive treatment for PTSD. As a result, it got worse over time. He later learned through therapy about PTSD and how it related to his lack of motivation and depression. He also testified that he experienced hyperawareness or hypervigilance regarding his surroundings, memory lapses and concentration issues, lack of trust in the Government which affects his willingness to take certain medications, frustration, anxiety, mood swings, lack of sleep, and insomnia. He also stated that he had trouble getting along with coworkers which resulted in actual physical fights. Claimant is currently treating with a psychologist but testified that at times he finds it uncomfortable to talk to him. (Rec. Doc. 7-1, p. 365 - 378).

The ALJ found Claimant was not disabled. Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining

whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the Claimant's subjective evidence of pain and disability, and (4) the Claimant's age, education, and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. **Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). *See also Smith v. Berryhill*, 139 S. Ct. 1865, 1772 (2019). A

person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C.     Evaluation Process and Burden of Proof

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work

in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D.      The ALJ's Findings and Conclusions

The ALJ made the following findings:

- At step one, that Claimant has not engaged in substantial gainful activity from his alleged onset date of September 1, 2014, through his date last insured, December 31, 2019. (Rec. Doc. 7-1, p. 15). This finding is supported by substantial evidence in the record.

- At step two, that Claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; arthritis/CPPD of the knees and feet; and diabetes mellitus. (Rec. Doc. 7-1, p. 16). This finding is supported by substantial evidence in the record.

- At step three, that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 7-1, p. 18). Claimant challenges this finding.

- The ALJ next found that through the date last insured, Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could only occasionally climb, stoop, crouch, crawl, and kneel and could not work in environments with heavy machinery with fast moving parts or at unprotected heights. (Rec. Doc. 7-1, p. 18). Claimant challenges this finding.

- At step four, the ALJ found Claimant is unable to perform past relevant work. (Rec. Doc. 7-1, p. 22). Claimant does not challenge this finding.

- At step five, the ALJ found Claimant is capable of performing certain jobs which exist in significant numbers in the national economy. (Rec. Doc. 7-1, p. 23). Claimant challenges this finding to the extent he challenges the ALJ's RFC finding

Considering the evidence in the record at the time, the ALJ found "very limited evidence of complaints and treatment for psychologically based symptoms in the file, which is inconsistent with a finding of severe impairment." She noted the C&P evaluation of December 2016 and Dr. Hutton's initial psychiatric evaluation for Claimant's PTSD symptoms in August of 2017 but stated that there are "no follow-up visits." The ALJ further noted that Claimant saw a therapist for the first time in March of 2018 and was recommended to give therapy a try, but that "there is no evidence in the file that he did, at least during the period under consideration in this case." She further noted that the next available mental health treatment notes are all from 2020, (after the date last insured) and that "even the 2020 records do not document significant abnormalities in behavior cognition, or overall presentation." (Rec. Doc. 7-1, p. 16 – 18).

The ALJ stated:

9

> In conclusion, I find that the available evidence of record supports the following limitations in the broad areas of mental functioning set out in section 12.00 of the Listings of Impairments (20 CFR, Part 404, Subpart P, Appendix 1): no limitations in understanding, remembering, or applying information; mild limitations in interactions with others; mild limitations in concentration, persistence, or pace; and no limitations in adaptation and self-management. The mild limitations in social functioning and concentration are assessed to accommodate the claimant's reports of mistrust and hypervigilance around others.

(Rec. Doc. 7-1, p. 17).

Regarding Dr. Hutton's "extreme conclusion regarding the claimant's ability to work," the ALJ found "the conclusion is not consistent with other evidence in the file, including the lack of abnormal findings during other exams and the limited treatment record in this case." *Id.*

The ALJ further relied on the State Agency psychological consultants (J. Kahler, Ph.D., and W. Farrell, Ph.D.) who found "insufficient evidence of mental functioning prior to the date last insured to allow for the evaluation of the B criteria and any mental residual functional capacity assessment in this case." (Rec. Doc. 7-1, p. 18).

### E. **The Allegations of Error**

Claimant asserts the following errors:

1. The ALJ mistakenly relied on the opinions of non-treating mental health evaluators who found that there was insufficient evidence in the record to evaluate the Plaintiff's mental health claimed impairments, thus, remand is necessary to have an ALJ examine appropriately the Plaintiff's mental impairments.

2. The ALJ failed to articulate a rational, medical, and evidentiary basis for ruling that the Plaintiff could perform the light level of employment activities the ALJ found in the residual functional capacity ("RFC") assessment on a regular and continuous basis.

### F. **Whether the ALJ mistakenly relied on the opinions of non-treating mental health evaluators who found that there was insufficient evidence in the record to evaluate the Claimant's mental health claimed impairments and whether the Appeals Council failed to consider new evidence**

Claimant argues that the ALJ mistakenly relied on the opinions of non-treating mental health evaluators who found that there was insufficient evidence in the record to evaluate the Claimant's mental health claimed impairments. In addition, Claimant submitted new evidence to the Appeals Council including records from the Alexandria VA dated July 16, 2016, to January 7, 2021. (Rec. Doc. 7-1, p. 28 – 351). As noted above, on July 1, 2021, Claimant's counsel sent a letter to the Office of Adjudication and Review (ODAR) in Alexandria, Louisiana stating that records from the Alexandria VA had been requested and not received. (Rec. Doc. 7-1, p. 568). Apparently, these records were not received in time for the State Agency psychological consultants or the ALJ to consider them.

Claimants are free to submit new evidence to the Appeals Council. 20 C.F.R. § 404.968(a). Such evidence is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhard*, 405 F.3d 332, 337 (5th Cir. 2005). The district court must examine all of the evidence, including the new evidence, to determine whether the Commissioner's final decision to deny a claim is supported by substantial evidence. *Sun v. Colvin*, 793 F.3d 502, 510 (5th Cir. 2015). Newly submitted evidence is material if (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003) (per curiam); 20 C.F.R. § 404.970(a)(5). "[T]he new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995). When the new evidence does not relate to the contested time period or concerns a subsequently acquired disability, the proper action is to file a new application for disability benefits based on the new condition. *Id*.

As stated above, Claimant submitted records from the Alexandria VA dated July 16, 2016, to January 7, 2021, to the Appeals Council. (Rec. Doc. 7-21, p. 28 – 351). This evidence relates to the September 1, 2014, to December 31, 2019, time period for which the disability benefits were denied. For the evidence to be considered, however, there must be a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d at 551-52. In this case, the Appeals Council found that the evidence submitted did not "show a reasonable probability that it would change the outcome of the decision." (Rec. Doc. 7-1, p. 5).

The evidence submitted is voluminous and contains detailed records of Claimant's treatment at the Alexandria VA, including the following:

1. <u>Mental Health Triage Note</u> dated June 16, 2017, wherein Claimant presented himself to Licensed Clinical Social Worker (LCSW) Sharon DeLoach to obtain help for his PTSD. (Rec. Doc. 7-1, p. 329).

2. <u>Psychiatry/Progress Notes</u> from over ten appointments that Claimant had with Dr. Hutton, a staff Psychiatrist, dated from and including December 19, 2017, to July 25, 2019.

3. <u>Psychology/Progress Notes</u> from over eighteen appointments that Claimant had with Dr. Peter Resweber, a clinical Psychologist, dated from and including April 5, 2018, to January 6, 2020.

4. <u>Medication Management Notes</u> from appointments that Claimant had with Dr. John Stroy, a family practitioner, dated August 1, 2017, and July 13, 2018.

5. The additional evidence further contains <u>Homeless Call Center Referral Notes</u>, <u>Patient Education Notes</u>, and <u>Nursing Ambulatory /Outpatient Care Notes</u>.

The Court disagrees with the finding of the Appeals Council that the evidence submitted

did not "show a reasonable probability that it would change the outcome of the decision." (Rec. Doc. 7-1, p. 5). The ALJ's opinion focused on the "very limited evidence of complaints and treatment for psychologically based symptoms in the file, which is inconsistent with a finding of severe impairment." (Rec. Doc. 7-1, p. 16). When noting Dr. Hutton's initial psychiatric evaluation for Claimant's PTSD symptoms in August of 2017, the ALJ stated that there are "no further follow-up visit notes after that." (Rec. Doc. 7-1, p. 17). The ALJ further noted that after seeing a therapist for the first time in March of 2018, "there is no evidence in the file that he [Claimant] did, at least during the period under consideration in this case." The ALJ further found the statements by Dr. Barwise that the claimant is "unable to sustain gainful employment" due to his PTSD unpersuasive, because it is "inconsistent with the claimant's limited mental health treatment." (Rec. Doc 7-1, p. 18). Finally, the ALJ relied on the State Agency psychological consultants who found "insufficient evidence of mental functioning prior to the date last insured to allow for the evaluation of mental residual functional capacity assessment." *Id.*

The Court finds that because many of the ALJ's findings were based on the lack of evidence of mental health treatment in the record, the voluminous records from the Alexandria VA which document Claimant's mental health treatment from July 16, 2016, to January 7, 2021, should be considered.

### G.   Whether the ALJ's RFC finding is based on substantial evidence.

A residual functional capacity assessment "is a determination of the most the Claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the Claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is responsible for determining a Claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the

evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a Claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

For the reasons set forth in the preceding section, the Court finds that the voluminous records from the Alexandria VA which document Claimant's mental health treatment from July 16, 2016, to January 7, 2021, should be considered in determining Claimant's RFC.

Accordingly, the Court finds that remand is warranted for the ALJ to consider the Alexandria VA records from July 16, 2016, to January 7, 2021.

### Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner for further consideration in light of the new evidence not previously considered. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA"). *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed at Lafayette, Louisiana on this 29th day of March, 2023.

DAVID J. AYO
UNITED STATES MAGISTRATE JUDGE